HUNTINGTON DRY–PULVERIZER CO. et al. v. ALPHA PORTLAND CEMENT CO. et al.

(Circuit Court, D. New Jersey. January 9, 1899.)

PATENTS—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

Defendant had in use in its business 21 machines of a kind which had been held by the court, in a suit against another defendant, to infringe complainant's patent, an appeal in which case was pending. Defendant had large orders on hand, requiring the constant use of the machines, and had some 200 persons in its employ. Complainant was unable to furnish its patented machines to replace those used by defendant, except gradually, as they could be built; and their cost, if so supplied, involved the expenditure of a large sum. Held, it appearing that defendant was financially responsible for any profits and damages recovered by complainant, that a preliminary injunction against the defendant's use of the infringing machines would not be granted, nor would defendant be required, as a condition, to replace such machines by those of complainant as rapidly as the latter could be built.[1]

This is a suit in equity by the Huntington Dry-Pulverizer Company and others against the Alpha Portland Cement Company and others for the infringement of the Huntington patent, No. 277,134, for a crushing mill. On motion for preliminary injunction.

Frederick S. Duncan, for complainants.
Charles Howson and Frederick S. Fish, for defendants.

KIRKPATRICK, District Judge. In the suit of Huntington Dry-Pulverizer Co. v. Whittaker Cement Co. (heard at this circuit) 89 Fed. 323, the court decreed the validity of the patent which is the foundation of the present complaint, and enjoined the defendants therein from the manufacture, sale, and use of the machines declared to be infringing. An appeal has been taken from this decree, which is still pending, and will no doubt be brought to hearing at the next March term of the circuit court of appeals. The defendants herein are users of some 21 of the infringing machines, and with them are engaged in the manufacture of Portland cement, extensively used in the trade, and for which they have large orders for future delivery. They are employing in and about their said business at this time some 200 or more persons. Financially they are said to be perfectly responsible, and able to answer in damages for any award which may be made against them. It is charged by the defendants, and practically admitted by the complainants, that the complainants have not been able at any time prior to the filing of their bill herein to furnish the defendants with their patented machines, nor can they do so now. This is partly owing to the com-

---

[1] As to infringement, generally, see note to Consolidated Piedmont Cable Co. v. Pacific Cable Ry. Co., 3 C. C. A. 572.

plainants' failure to manufacture such machines for general sale, and partly on account of the provisions of contracts entered into between them and persons not parties to the record respecting a license to use said machines. The latter obstacle, the complainants insisted, had since the filing of the bill been removed, but the former remains in full force. To award an injunction against the defendants at this time would result in throwing out of employment the great number of persons above mentioned, thereby causing much suffering and distress, would bring to a stop a useful industry, prevent the performance of contracts, and cause a disarrangement of business beyond that which is under the direct control of the defendants. The complainants at the hearing recognized the force of these objections, and suggested as a measure of relief the proposition that they would build for the defendants, upon the receipt of a firm order from them, enough machines of complainants' device to take the place of the infringing machines now used by them, and said that they would consent that the injunction order should be operative against the infringing machines only when they should furnish machines of complainants' device capable of doing the work now performed by those now in use, and that, as the work of each infringing machine was provided for by their patented device, such supplanted machine should fall within the scope of the order, and its further use discontinued. The estimated cost of these Huntington machines amounts to a very large sum of money. It does not appear within what time they could be built and made ready for use, nor whether they could be advantageously erected upon the defendants' premises. Apart from the profit which would accrue to the complainants from the sale of their machines, I can find no substantial benefit to the complainants in granting the prayer of their bill. When we consider that the enforcement of the complainants' naked right to an injunction is not necessary to enable them to recover the profits and damages to which they are entitled as against the defendants, and weigh, as we are bound to do, the advantages accruing to the complainants with the injuries (for which there may be no legal remedy) which would result to the defendants, we are of the opinion that, under the circumstances of this case as disclosed in the moving papers, a preliminary injunction order ought not to issue against the defendants as users of the infringing machines. The rule to show cause will be discharged.